UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LARRY BANKS, B42423,

    Petitioner,

    v.

JACQUELINE LASHBROOK, Warden,

    Respondent.[1]

No. 15 C 2577
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Larry Banks ("Petitioner") is serving a fourteen-year sentence for a 2012 burglary conviction. Petitioner now challenges his state-court conviction by filing a petition pursuant to 28 U.S.C. § 2254 (the "Petition"). For the reasons stated below, I am denying the Petition and declining to issue a certificate of appealability.

## BACKGROUND

During a bench trial that took place in 2012, Petitioner was convicted of burglary and, based in part on various prior convictions, sentenced to fourteen years of imprisonment. On an August night in 2010, Petitioner smashed a beauty supply shop's glass door and stole hundreds of dollars from inside. In doing so, Petitioner cut himself and bled on the shop's cash register. Preliminary testing of the blood revealed a match to Petitioner's DNA profile in a federal database, and confirmatory testing after his 2011 arrest verified his guilt. This forensic evidence was bolstered by a police officer's recollection that, when he interviewed Petitioner about the DNA result, Petitioner gestured toward the remnant of a healed cut on his neck and told the officer that it was caused by some glass.

---

[1] Although this case originally named Thomas A. Spiller as Respondent, I am substituting Acting Warden Jacqueline Lashbrook because she is Petitioner's current custodian at Pinckneyville Correctional Center. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005).

1

During sentencing, Petitioner told the judge orally and in a written motion that he believed that his counsel had been ineffective. Those remarks led the judge to question Petitioner under *People v. Krankel*, 464 N.E.2d 1045 (Ill. 1984), a case requiring Illinois circuit courts to inquire into a defendant's pro se, post-trial allegations of ineffective assistance to determine whether new counsel should be appointed to further develop the record — thus potentially allowing merits review of the ineffective-assistance claims in post-trial proceedings and on direct appeal, rather than awaiting the filing of a separate postconviction action. *See People v. Jolly*, 25 N.E.3d 1127, 1133-35 (Ill. 2014, as modified 2015) (characterizing *Krankel* inquiry as Illinois common-law procedure); *People v. Moore*, 797 N.E.2d 631, 637-38 (Ill. 2003) (same).

As relevant here, Petitioner claimed that his counsel was ineffective for (1) not moving to suppress his incriminating statement from the police interview, and (2) failing to investigate possible flaws in the DNA testing. Upon questioning Petitioner and recounting the case's procedural history, the trial court held that the record defeated Petitioner's claims and that no further inquiry was needed.

*Direct Appeal*

On direct appeal, Petitioner claimed that the trial court misapplied *Krankel* by too cursorily questioning Petitioner and counsel about (1) Petitioner's theory that trial counsel was ineffective for failing to argue that Petitioner's incriminating statement was made in violation of his right to counsel during interrogation, and (2) Petitioner's theory that counsel might have left unexplored some decisive flaw in the DNA testing. Petitioner thus requested a "remand for additional *Krankel* inquiry by the trial court." Petitioner further claimed that his sentence was excessive.

The appellate court rejected Petitioner's *Krankel* claims because further post-trial

2

exploration of Petitioner's theories would have been highly unlikely to support a valid claim of ineffective assistance. Specifically, the appellate court reasoned that Petitioner's claim that counsel should have moved to suppress his incriminating statement foundered on Petitioner's own mutually contradictory assertions. Although his written post-trial motion averred that the incriminating statement was obtained in violation of his constitutional rights, Petitioner told the judge orally at the *Krankel* hearing that the incriminating statement was wholly fabricated by police — and, indeed, that he did not even recognize the officer who claimed to have questioned him. The appellate court alternatively held that, even if Petitioner's statement could have been suppressed, he was not prejudiced because the DNA evidence independently made his conviction all but inevitable.

With regard to Petitioner's incriminating DNA evidence, the appellate court held that the record not only failed to reveal any flaw in the DNA testing, but also made it highly improbable that any such flaw lay hidden somewhere or that counsel had failed to diligently search for one. In pretrial proceedings, Petitioner's counsel had characterized the DNA evidence as central to the case, agreed to a continuance in order to consult a DNA expert, sought additional time to complete a lengthy review of the test results, and even reviewed the DNA results with Petitioner himself. Given these steps, the appellate court held that it was not reasonable to suspect that counsel's investigation of the issue was deficient or that Petitioner was prejudiced. Finally, the appellate court held that Petitioner's fourteen-year sentence comported with Illinois law — particularly given his prior convictions for burglary, theft, drug crimes, and other offenses.

Petitioner then filed a counseled Petition for Leave to Appeal ("PLA") in the Illinois Supreme Court that raised only his *Krankel* claims, to no avail.

*Attempted Postconviction Review and Other Collateral Attacks*

Beginning in July 2012, while his direct appeal was still pending, Petitioner filed or attempted to file several state postconviction petitions and other collateral attacks. Each was dismissed or denied. With just one exception, Petitioner did not appeal. The exception was an order denying leave to file a "second successive" postconviction petition. Petitioner's appeal of this decision is currently pending.

*Federal Petition*

In March 2015, [2] Petitioner timely filed a petition under 28 U.S.C. § 2254 that, construed generously, asserts eleven claims:

> (1) The trial judge failed under *Krankel* to help him develop the record regarding his claims of ineffective assistance of counsel;
>
> (2) He was maliciously prosecuted;
>
> (3) His arrest and the collection of a confirmatory DNA sample violated the Fourth Amendment;
>
> (4) The State knowingly used perjured testimony at trial;
>
> (5) The trial judge was biased;
>
> (6) His arrest and the seizure of his personal effects somehow violated due process, equal protection, and the First Amendment;
>
> (7) His sentence is excessive;
>
> (8) Trial counsel was ineffective for not moving to suppress his incriminating statement;
>
> (9) Trial counsel was ineffective for not identifying some flaw in the DNA testing;
>
> (10) The trial court should have suppressed his self-incriminating statement; and

---

[2] Petitioner filed his first federal petition under 28 U.S.C. § 2254 in 2013, but it was dismissed for want of exhaustion because his direct appeal was still pending. *Banks v. Gaetz*, No. 13 C 1642 (N.D. Ill. Mar. 12, 2013).

> (11) The court should have excluded the DNA tests as unreliable,
> and in any event they were too unreliable for a finding of guilt.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a). Violations of state law are noncognizable on federal habeas review unless these violations themselves infringe upon the petitioner's federal rights. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

To obtain relief, a petitioner must show that the state court's proceedings either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Under this deferential standard, the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). "[C]learly established Federal law" under section 2254(d)(1) "consists of 'the holdings, as opposed to the dicta,'" of the Supreme Court's cases. *Wong v. Smith,* 131 S.Ct. 10, 11 (2010) (quoting *Williams,* 529 U.S. at 412). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from

5

relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). The state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* This is a difficult standard to meet: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). To obtain relief, a habeas petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

Before a district court can consider a petitioner's claims, the petitioner must "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009) (alteration in original) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that a petitioner must give state courts an opportunity to resolve his constitutional claims "by invoking one complete round of the state's established appellate review process." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). To do so, a petitioner must "present both the operative facts and the legal principles that control each claim" at each level of state review. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (citation omitted). This includes presenting the claim in a petition for discretionary review with the Illinois Supreme Court,

*Boerckel*, 526 U.S. at 845–47. "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). "A procedural default also occurs when a state court disposes of a claim on an independent and adequate state law ground." *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008) (citing *Coleman v. Thompson,* 501 U.S. 722, 730 (1991)). Procedural default precludes federal court review of a petitioner's habeas claim. *Johnson,* 559 F.3d at 752.

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice caused by the alleged violation of federal law, or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *Smith*, 598 F.3d at 382. Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice in this context "means an error which so infected the entire trial that the resulting conviction violates due process." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (citation omitted). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Coleman*, 501 U.S. at 748 (quoting *Murray*, 477 U.S. at 496).

## DISCUSSION

### I.  Claim 1 (*Krankel* Violation)

Federal habeas review is restricted to claimed errors of federal law. 28 U.S.C. § 2254(a); *Cooke*, 562 U.S. at 219. Because the *Krankel* procedure is required by Illinois state law and not federal law, Petitioner's *Krankel* claim is denied as noncognizable. *See Clark v.*

7

*Gaetz*, No. 10-3185, 2012 WL 3185889, at *4 (C.D. Ill. Aug. 2, 2012); *Reed v. Rednour*, No. 10-2030, 2011 WL 1792865, at *10 (C.D. Ill. May 11, 2011); *Cummings v. Rednour*, No. 08 C 5723, 2010 WL 4340448, at *6 (N.D. Ill. Oct. 22, 2010); *Dolis v. Gilson*, No. 07 C 1816, 2009 WL 5166228, at *13 (N.D. Ill. Dec. 23, 2009).

**II.      Claims 2-6**

Because Petitioner did not present Claims 2 through 6 in the state appellate or supreme courts on direct appeal or after his first postconviction petition was denied, those claims are procedurally defaulted — unless they can still be validly raised in the ordinary course of postconviction review. *See Boerckel*, 526 U.S. at 845 (requiring petitioners to invoke "one complete round of the State's established appellate review process"). They cannot, and thus they are defaulted.

To be sure, Petitioner is now appealing a state-court order denying successive postconviction review. But this appeal lies outside the course of ordinary review and thus does not furnish a vehicle for exhausting otherwise-defaulted claims. *Cf. Martinez v. Jones*, 556 F.3d 637, 639 (7th Cir. 2009) (Illinois prisoner's request for successive postconviction review is properly filed and thus tolls federal limitations period only if state court grants leave to pursue such review); *cf. also Castille v. Peoples*, 489 U.S. 346, 351 (1989) (request for discretionary leave to file original action in state supreme court ordinarily does not count as fair presentment because it lies outside ordinary course of review).

Illinois law entitles a prisoner to file just one postconviction petition. 725 ILCS 5/122-1(f). No successive petition may be filed "without leave of the court." *Id.* And leave "may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* Here, although

8

the written record does not expressly state that leave to file was denied, neither does it state that leave was granted. *See* Exh. M at C271. Rather, the postconviction court's disposition says that "THE 2ND SUCCESSIVE PRO SE POST-CONVICTION PETITION WAS DENIED WITHOUT MERIT — SAME GROUNDS AS THE 1ST POSTCONVICTION DENIED." *Id.*

Thus, the court recognized that Petitioner had raised or could have raised each of his current claims in one of his prior petitions, *see* 725 ILCS 5/122-1(f), and there was no suggestion that Petitioner had established cause and prejudice. So there is no reason to think that the appellate or supreme courts will view Petitioner's claims as falling within a properly filed successive postconviction action. Accordingly, Claims 2 through 6 are defaulted, rather than merely unexhausted. *See* 28 U.S.C. § 2254(c) (state remedies are considered available for exhaustion only so long as petitioner "has the right under the law of the State" to pursue such claims).

## III.     Claim 7 (Excessive Sentence)

Claim 7 (Excessive Sentence) is procedurally defaulted because Petitioner abandoned it in the Illinois Supreme Court after raising it on direct appeal. To the extent it implicates the Eighth Amendment, Petitioner defaulted Claim 7 by omitting it from his direct-appeal PLA after raising it in the appellate court. *See Boerckel*, 526 U.S. at 845, 848 (failure to raise claim in PLA works a procedural default). In any event, the claim appears to depend on alleged errors of *state* sentencing law and thus would not be cognizable here anyway.

## IV.     Claims 8 and 9 (Ineffective Assistance of Counsel)

To prevail on an ineffective-assistance claim under *de novo* review, a petitioner must show (1) counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) "there is a reasonable probability that, but for counsel's

9

unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Regarding counsel's performance, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Thus, a petitioner must "overcome" the presumption that counsel's actions "might" be considered sound strategy. *Id.* Regarding *Strickland*'s prejudice prong, although a petitioner need not show that counsel's actions more likely than not affected the outcome, "the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight." *Richter*, 562 U.S. at 112.

Because the Illinois appellate court here opted to base its rejection of Petitioner's *Krankel* claims on the weakness of his underlying ineffective-assistance claims, however, de novo review is unavailable; instead, Petitioner must show that the appellate court's application of *Strickland* was itself unreasonable beyond debate. *See* 28 U.S.C. § 2254(d)(1); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (discussing "doubly deferential" review of counsel's performance under § 2254(d)). Petitioner has not made this showing for either of his ineffective-assistance claims.

Petitioner's claim that counsel wrongly failed to move to suppress his incriminating statements is barred by § 2254(d) for several reasons. First, the appellate court held that further inquiry into Petitioner's claim of an uncounseled or involuntary incriminating statement would be fruitless because at the *Krankel* hearing, Petitioner orally denied that he had made any incriminating statement — and even that he had encountered the officer who testified about the statement. The crux of the appellate court's decision was that, in light of Petitioner's conflicting assertions and the officer's recollection of their interview, a motion to suppress would have been sure to fail. Second, and in any event, the appellate court alternatively held that Petitioner could

not have been prejudiced by the alleged failure to suppress his statement because the DNA evidence, standing alone, virtually assured his conviction. Thus, whatever may have guided counsel's decision on the suppression issue, there was no reasonable probability of a different outcome. *See id.* (citing *People v. Sims*, 9 N.E.3d 621, 630-31 (Ill. App. Ct. 2014).

In sum, the appellate court held that Petitioner was not prejudiced by any failure to file a suppression motion — both because such a motion had no reasonable probability of success, and because suppressing Petitioner's statement would have no reasonable probability of yielding an acquittal in any event. These holdings were reasonable and thus bar relitigation under § 2254(d).

Petitioner's claim that counsel wrongly failed to discover flaws in the DNA testing is similarly barred by § 2254(d). In holding that *Krankel* did not require the trial judge to further question counsel about his investigation of the DNA evidence, the appellate court noted ample evidence that counsel *had* thoroughly investigated this topic:

> • In pretrial proceedings, counsel told the court that he recognized the DNA evidence as central to the case;
>
> • Counsel agreed to a continuance in order to consult a DNA expert;
>
> • Counsel sought additional time to complete a multi-day review of the various DNA test results; and
>
> • Counsel reviewed the DNA results with Petitioner himself.

Accordingly, Petitioner cannot overcome the presumption that these investigations were reasonable; there was no reasonable probability that any other investigative steps would have identified a flaw in the DNA evidence; and further questioning of Petitioner or counsel under *Krankel* was unnecessary because it was highly unlikely to change either of the first two conclusions. To put the matter in *Strickland* terms, counsel neither performed deficiently nor

prejudiced Petitioner. *See Strickland*, 466 U.S. at 687, 694. Those holdings were reasonable, thus barring relitigation under § 2254(d).

In addition to failing under § 2254(d), Petitioner's ineffective-assistance claims are procedurally defaulted because he failed to present them to the Illinois Supreme Court. *See Boerckel*, 526 U.S. at 845, 848 (failure to raise claim in PLA works a procedural default). When a defendant pursues only a *Krankel* claim, as Petitioner did, an appellate court is free to deny that claim on the ground that the underlying *Strickland* claims are plainly meritless — as happened here. But a defendant who then wants his *Strickland* claims reviewed by the Illinois Supreme Court still must say so in a PLA. Here, Petitioner did no such thing.

## VI. Claims 10 and 11 (Improper Admission of Incriminating Statement and Flawed DNA Evidence)

Claims 10 (Improper Admission of Incriminating Statement) and 11 (Flawed DNA Evidence) are procedurally defaulted because they were not fairly presented in state court. As standalone claims, they were never presented to the appellate and supreme courts at all; at most, they formed the backdrop to Petitioner's state-law claims of *Krankel* error.

Presenting a claim of ineffective assistance usually does not fairly present the substantive claims underlying it, for "an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). In *Lewis*, the Seventh Circuit held that a petitioner's Section 2254 claims were procedurally defaulted because they had not been presented as independent claims for relief, but only as examples of counsel's failures. *Id.*

Here, Petitioner claimed that the trial court violated state law by not adequately helping him build a record to support his putative *Strickland* claim that trial counsel was ineffective for

12

not pressing Claims 10 and 11. To that end, he requested not a new trial, but a "remand for additional *Krankel* inquiry by the trial court." Similarly, his PLA did not ask the Illinois Supreme Court to review his involuntary-statement and flawed-DNA claims on the merits in light of the existing record if it declined to review a *Krankel* issue. Under *Lewis*, this presentation was too attenuated to fairly present his substantive claims.

**VII.     Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner "must make a substantial showing of the denial of a constitutional right" by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c)(2). When a claim is resolved on procedural grounds, a district court can grant a certificate of appealability "only when the proverbial reasonable jurist would find both the district court's procedural decision and the merits of the claim debatable." *Peterson v. Douma*, 751 F.3d 524, 530–31 (7th Cir. 2014).

As fully explained above, Petitioner's claims are either procedurally defaulted, noncognizable, or barred by 28 U.S.C. § 2254(d). Nothing in the record suggests that reasonable jurists would debate the outcome of the Petition or find a reason to encourage Petitioner to proceed further. Accordingly, I decline to issue Petitioner a certificate of appealability.

## CONCLUSION

All of Petitioner's claims are either noncognizable, procedurally defaulted, or barred by 28 U.S.C. § 2254(d). I am therefore denying Petitioner's petition for a writ of habeas corpus and declining to issue a certificate of appealability.

ENTER:

*[Signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: February 18, 2016